Martin Chase *et al. vs.* Almardon Mills, Inc.
Realty Associates, Inc. *vs.* Almardon Mills, Inc.
Almardon, Inc. *vs.* Realty Associates, Inc.
Almardon, Inc. *vs.* Martin Chase *et al.*

DECEMBER 9, 1963.

Present: Condon, C. J., Roberts, Powers and Joslin, JJ.

64

ROBERTS, J. These are four actions in assumpsit, two of which were brought by the owners of industrial property

as lessors against the lessee thereof to recover unpaid rent, the other two having been brought by the lessee against the lessors, one to recover for goods sold and the other to recover damages alleged to have resulted from the breach of a covenant contained in the lease. These cases were tried together to a justice of the superior court sitting without a jury. Decision was for the plaintiff lessors in each of the actions brought to recover the unpaid rent, for the plaintiff lessee in the action brought to recover for goods sold, and for the defendant lessors in the action to recover damages for the alleged breach of the covenant. The lessee has prosecuted a bill of exceptions to this court in each action. However, its exceptions in the action to recover for goods sold have been waived.

It appears from the evidence that Realty Associates, Inc. and Martin Chase, hereinafter referred to as Chase, were the owners of a building known as the Ann & Hope Mills located in the town of Cumberland. It further appears that on April 30, 1947 Chase executed a lease demising portions of that building to Almardon Mills, Inc., hereinafter referred to as Almardon. The original lease expired on January 31, 1952 and was renewed by the parties for another term to end on January 31, 1957.

It further appears from the evidence that during October 1956 Almardon, through its president Albert J. Owler, conferred with Chase concerning its occupancy of the premises under consideration after the expiration of the lease on January 31, 1957. According to his testimony, Owler informed Chase of his plan to liquidate the business and of his desire to attempt its sale as a going concern. It is not disputed that Chase agreed to Almardon's continued occupancy of the premises after the expiration of the lease, and that as Almardon in the process of terminating its business relinquished its occupancy of portions of the premises Chase would reduce the rent proportionately. The evidence is in

conflict, however, as to the contention of Chase that there would be an increase in the rent to be paid by Almardon after the lease had expired. While Almardon denies that the agreement concerning holding over included an increase in the rent to be paid, Chase claims that it had agreed to the continued occupancy only on the basis of a stated increase in the rental after January 31, 1957.

The evidence discloses that on January 28, 1957 Chase sent a letter to Almardon notifying it of a revision in the rent schedules that were to become effective with all lease renewals, to which letter was attached a new schedule of rents. The receipt of this letter is not denied by Almardon but, according to the testimony of its president, no attention was paid to it because of his belief that under his agreement with Chase for holding over after the termination of the lease the rent would remain the same as it had been under the lease. Acting in accordance with this belief on the part of its president, Almardon continued to pay its rent on the basis of the rate established in the lease that expired on January 31, 1957 although after its expiration, that is, in February 1957, Chase began to bill Almardon for rents on the basis of the increase that it contends was agreed to by Almardon.

In his decision the trial justice directs attention to the conflicting evidence on the issue of whether Almardon's occupancy of the demised premises after the expiration of the lease was to be at an increased rent and notes the importance of credibility in such circumstance. He discloses that his conclusions as to credibility derive from the circumstances surrounding the negotiations of the parties with respect to holding over by Almardon. In this regard he notes that a conference was held during October 1956 on the subject of the continued occupancy by Almardon, at which it was agreed that Almardon was to be permitted to hold over pending a liquidation of its business. He passed also

upon the probative force of the letter of Chase to Almardon dated January 28, 1957 referring to an increased rental and containing a schedule of the increases proposed for the demised premises, the billing of Almardon for the rent at the increased rate after January 31, 1957, and the absence of objection thereto by Almardon for a considerable period of time.

Concerning this the trial justice said: "But with this letter of January 28th sent and received, and no reply, and the bills sent cumulatively thereafter, with no verbal objection to them for a considerable period of time, at any rate, and no discussion, no — I think his testimony is there was no discussion of it, of a change of rent, after January 28th, it seems to me Mr. Owler puts himself in a situation where regardless of what actually took place, * * * I am forced to find that by a fair preponderance of the evidence the plaintiffs, Chases and Realty Associates, make out their case for the increased rents; and that includes the monthly rental, and, in the same category, because I don't see any difference between them, the steam charges and the water charges and the rodent charges, and I think they're entitled to decisions for the rent which they have claimed."

Conclusions reached by a trial justice as to credibility ordinarily will be given substantial weight by this court, and unless the transcript discloses matters which tend to show that his judgment as to credibility was erroneous we will not disturb his decision. *Dockery* v. *Greenfield,* 86 R. I. 464. This rule reflects our recognition that the trial justice has the substantial advantage in an exercise of the fact-finding power of observing witnesses testify and in such circumstances his conclusions as to credibility ought to stand unless he was clearly wrong, or, as we stated in *Loughran* v. *DelSanto,* 79 R. I. 150, 155, "unless there is something in the record which clearly shows that he was mistaken in his judgment of the credibility of the witnesses."

It is vigorously contended on behalf of Almardon that the record contains material which establishes the erroneous conclusions as to credibility that were reached by the trial justice. To this end our attention is directed to portions of the testimony of Chase which, it is alleged, impeach his testimony as to the agreement concluded in October 1956; to the alleged misconception on the part of the trial justice as to the import of the letter of January 28, 1957; and to the failure of Chase to require compliance on the part of Almardon with the increased rent set out in the bills rendered after the expiration of the lease. Almardon is contending, as we understand it, that the trial justice misconceived the probative effect of the evidence that, had it properly been evaluated by him, would have required him to reject the testimony of Chase concerning the agreement of October 1956. Conceding that such evidence is in the record, we are unable to agree as to its effect on the finding of the trial justice that an agreement was made during October 1956. We do not perceive that it establishes anything more than the existence of a conflict which the trial justice was required to resolve. We are unable to agree that such evidence, taken in itself, would preclude the trial justice from finding that Chase was an entirely credible witness.

The contention is also made on behalf of Almardon that the trial justice erred in awarding damages to Chase in that the measure of damages applied was that of the fair rental value of the premises, an issue with respect to which the record is barren of evidence. We are unable to agree after closely scrutinizing the decision that the trial justice based his award of damages on the fair rental value of the premises but rather it is our opinion that he applied as the measure of damages the rate set out in the schedule attached to the letter of January 28, 1957. This letter, the trial justice found, constituted the part of the agreement into which the parties entered in October 1956 concerning Almardon's

continued occupancy of the premises after the expiration of the lease. It is our further opinion that the inclusion of steam and water charges in the damages awarded was entirely proper, the trial justice having found, by virtue of the letter of January 28, 1957, such to be included in the monthly rent to be charged after the expiration of the lease.

Almardon contends that it was error for the trial justice to give decision to the defendant lessor in its action to recover damages alleged to have resulted from a breach of the covenant contained in Art. Tenth of the lease on the part of Chase. The pertinent portion of the covenant reads: "* * * and the Lessor reciprocally covenants that it will not permit any occupancy or other use of the building of which the demised premises are a part which in effect will deny to the Lessee rates for fire and other insurance normally applicable to the type of textile manufacturing in which the Lessee may be engaged." This action was brought by Almardon to recover a portion of the insurance premiums it claims it was compelled to pay by reason of a breach of the above-quoted covenant on the part of Chase.

It appears that in 1947 at the time of the execution of the original lease, Almardon was insured against fire by a stock company, so called. However, it is not disputed that in 1949 it succeeded in obtaining fire insurance coverage from a mutual company, so called, at substantially lower rates than it had been paying for similar insurance provided by the stock company. It appears that in May 1953 after the occurrence of a fire in a part of the premises occupied by another tenant, the mutual company cancelled its coverage of Almardon's plant. This apparently required Almardon to procure insurance coverage again with a stock company at a substantially higher rate. Almardon contends that the cancellation resulted from a failure on the part of Chase to comply with recommendations of the mutual insurance company to "maintain the prior acceptable

level of fire safety in the face of increasing danger of fire."

Almardon is contending, as we understand it, that the covenant contained in Art. Tenth relates in time to the renewal of the lease in 1952 and that it should be construed as of that time as to its obligation. It is not disputed that in 1952 Almardon was protected against loss by fire through insurance issued by a mutual company. It is on this basis that it argues that the covenant's reference to the type of insurance normally applicable in the textile business contemplates the insurance that was in effect at the time of the renewal, that is, insurance provided by a mutual company.

With this we are unable to agree. If a distinction may be made validly between insurance coverage provided by a stock company and that provided by a mutual company, it is of no avail to Almardon in the instant circumstances. The covenant here under consideration contains no express provision that limits the term "insurance" as used therein to coverage provided by either of such companies to the exclusion of the other. It is our opinion that the trial justice correctly noted the generality of the terms of the covenant, and it is our further opinion that it contemplates the availability of insurance without regard to the nature of the corporate structure of the company which provides the coverage. If Almardon were permitted to limit the term "insurance" as contained in the covenant to that issued by mutual companies by proving at this time that such was the insurance coverage in effect at the time of the renewal of the lease, it would be adding something to the terms of the covenant by parol. This it may not do. *D. M. Watkins & Co.* v. *Greene,* 22 R. I. 34.

An examination of the covenant discloses the lessor's agreement not to permit "any occupancy or other use" that would have the effect of impairing the insurability of Almardon. To establish a breach thereof then by Chase, it

becomes essential to show that some occupancy or use permitted by Chase had the effect of impairing the insurability of Almardon. To this end Almardon argues that it had shown that while the uses permitted by Chase in 1949 did not adversely affect the insurability of Almardon, Chase permitted a growth and extension of such uses that by 1953 had become dangerous because of the repeated failure of Chase to intensify its compliance with the required fire prevention and extinguishment practices. If we were to concede that proof of such failure would establish a breach of the covenant provisions concerning occupancy and use and impair Almardon's insurability, the question remains whether it has sustained the burden of proof on the fact issue, that is, that Almardon proved by a fair preponderance of the evidence that the uses permitted were an efficient cause of the cancellation of the insurance coverage it had been getting from the mutual company. The trial court found as a fact that Almardon had failed to meet the burden of proof on the essential elements to its recovery in the instant action.

The trial justice in fact found that Almardon had not established by a fair preponderance of the evidence that its mutual insurance coverage was lost because of any use made of the premises that had been permitted by Chase. It is our opinion that this finding must be conclusive on the issue of whether Chase breached the covenant to the extent that it related to occupancy or use. The record discloses that a substantial volume of evidence was adduced to establish the intense nature of the supervision maintained by the mutual companies over hazards that may exist in premises insured by them. There is, however, in this record nothing that is persuasive that this supervision and inspection maintained by mutual companies is probative of anything more than that such companies are vigilant in supervising the condition of premises insured by them.

As we have already stated, the findings of a trial justice

sitting without a jury on conflicting evidence will be given great weight by this court and will not be disturbed unless shown to be clearly wrong. The trial justice in this case made such a finding, and we perceive nothing in the record upon which we could predicate a conclusion that he was clearly wrong. To the contrary, he specifically referred to the evidence that had been adduced, and he noted the voluminous character of the reports and recommendations that were contained therein and said: "All those things are true, and all those things appear in this large volume of reports here, where again and again attention is called to something that should be rectified. But there is nothing in all of those that convinces me that by a fair preponderance of the evidence here it has been demonstrated that the mutual companies withdrew from this risk because of the failure of the landlord to properly govern the type of occupancy of the tenants." It is our opinion that no error inheres in the decision of the trial justice in the action of Almardon to recover for a breach of the covenant contained in Art. Tenth of the lease.

There remains Almardon's contention that the trial judge erred in denying its motions to amend its declarations by adding a count thereto. It appears from the record that during a recess in trial Almardon moved to amend its declarations by adding a count alleging a breach of the covenants contained in Art. Twenty-third of the lease, specifically with relationship to the lessor's covenant to maintain the premises in good repair, including "all sprinklers, water and plumbing equipment." A motion to amend a pleading during trial is addressed to the sound discretion of the trial court. *Ringuette* v. *Superior Court,* 88 R. I. 218. In the instant circumstances, however, it is our opinion that if it were an abuse of discretion to have denied the motion to amend, Almardon suffered no prejudice as a result thereof.

An examination of the record reveals an abundance of evidence on the lessor's actions as they related to the covenants contained in Art. Twenty-third, and it is clear that the trial justice in his decision considered whether Chase had breached them and found that it had not. In this respect the trial court said: "Now, there is some testimony upon other aspects of the leases in regard to insurance, as to whether a watchman was on duty, and so forth, but it is vague testimony * * *." Obviously, the trial justice passed on the issues involved as if the declaration had been amended as moved, and in such circumstances the case may be similarly treated in the prosecution of a bill of exceptions to this court. *Beaudette* v. *Cavedon,* 50 R. I. 140. Whatever error might inhere in the denial of the motion to amend, the conclusion is inescapable that he considered evidence bearing on the issue of whether the covenants of Art. Twenty-third had been breached. In such circumstances we are constrained to hold that the error, if any, did not prejudice Almardon. See *Douglas Furniture Corp.* v. *Ehrlich,* 91 R. I. 7.

In each case brought by the plaintiff lessor all of the exceptions of the defendant lessee are overruled; in each case brought by the plaintiff lessee all of the exceptions of the plaintiff lessee briefed and argued are overruled; and all of the cases are remitted to the superior court for entry of judgment on each decision.

### On Motion for Reargument.

#### DECEMBER 20, 1963.

Per Curiam. After our opinion in the above cases was filed the defendant lessee in Martin Chase et al. v. Almardon Mills, Inc. and Realty Associates, Inc. v. Almardon Mills, Inc. asked and received permission to file a motion for reargument. Pursuant thereto it has filed such a mo-

tion, setting out therein certain reasons on which it bases its contention that justice requires a reargument of the cases.

We have carefully considered these reasons and are of the opinion that they suggest nothing which in the circumstances warrants a reargument.

Motion denied.

*Abedon and Abedon, Bernard B. Abedon, Richard L. Abedon,* for lessors.

*Harold H. Winsten,* for lessee.